J-S01029-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEREMIAS SANCHEZ | : | |
| | : | |
| Appellant | : | No. 1300 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 9, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0406041-2005,
CP-51-CR-0701981-2005.

BEFORE:   BOWES, J., KUNSELMAN, J., and STRASSBURGER, J.*

MEMORANDUM BY KUNSELMAN, J.:               **FILED NOVEMBER 17, 2020**

Jeremias Sanchez appeals from the judgment of sentence imposed following the revocation of his probation.  Additionally, Sanchez's court-appointed counsel has filed a motion to withdraw as counsel and an accompanying brief pursuant to ***Anders v. California***, 386 U.S. 738, 744 (1967).  We grant appellate counsel's motion to withdraw and affirm Sanchez's judgment of sentence.

On July 26, 2005, Sanchez pled guilty to one count of possession with intent to deliver at two separate dockets.  Pursuant to the negotiated plea agreement, the trial court sentenced Sanchez to one year in the intermediate punishment ("IP") program, "which included long-term inpatient drug

_____

* Retired Senior Judge assigned to the Superior Court.

treatment, plus one year of reporting probation." PCRA Court Opinion, 9/13/19, at 1. Additionally, Sanchez "was ordered to successfully complete drug treatment, seek and maintain employment, undergo random urinalysis, stay out of trouble with the law, perform 20 hours of community service and pay costs and fines." *Id.*

The PCRA court summarized the subsequent, protracted facts and procedural history as follows:

> Shortly thereafter, [Sanchez] absconded from the drug treatment program. He appeared before this [c]ourt on January 13, 2006 for his first violation hearing. This [c]ourt found him in technical violation and ordered a 90 day modification of his IP sentence. On March 9, 2006, [Sanchez] was paroled to an inpatient drug treatment program. He once again absconded from the program. He was apprehended by authorities more than a year later on April 30, 2007. [Sanchez] appeared before this [c]ourt for his second violation hearing on August 16, 2007. This [c]ourt found him in technical violation, revoked his IP probation, and sentenced him to 11½ to 23 months of county incarceration plus 3 years [of] reporting probation on each charge to run concurrently. [Sanchez] was ordered to complete 90 days in the Options drug treatment program, complete job training, take English language courses, and comply with all terms and conditions of the sentence.
>
> On April 1, 2009, [Sanchez] was arrested and charged with [possession with intent to deliver and criminal conspiracy]. He appeared before this [c]ourt on March 25, 2010 and pled guilty to these charges. [Sanchez] was recommended to participate in the state IP program and sentencing was deferred; however, [Sanchez] got into a fight in jail while awaiting state IP approval and, as a result, his request to participate was denied. On September 17, 2010, this [c]ourt sentenced him to 2½ to 5 years [of] sate incarceration plus 5 years [of] reporting probation on all three of his cases to run concurrent with one another.

> [Sanchez] was released on parole on April 6, 2014. On October 21, 2014, he was arrested in Luzerne County and charged with burglary and related charges. He pled guilty to these charges on December 20, 2016 and was sentenced to 18 to 36 months [of] incarceration.

PCRA Court Opinion, 9/13/19, at 2.

Given his Luzerne County convictions, Sanchez appeared for his fourth probation violation hearing at the above two cases on May 9, 2017. At that time, the trial court reviewed Sanchez's criminal history since his 2005 guilty plea, a probation officer's summary report, as well as argument and sentencing recommendations from both defense counsel and the Commonwealth. In addition, Sanchez spoke on his own behalf.

After considering all of this information, the trial court found Sanchez in direct violation and revoked his probation at each docket. The court then sentenced Sanchez to 3 to 6 years of state incarceration at each docket, to run consecutively, for an aggregate sentence of 6 to 12 years of incarceration. In addition, the trial court ordered that this sentence run consecutively to the Luzerne County burglary sentence he was already serving. On May 22, 2017, Sanchez filed a counseled petition to vacate and reconsider his sentence. He claimed the sentence was excessive for a variety of reasons. That same day, Sanchez filed a *pro se* motion for a reconsideration of his sentence. There is no indication in the certified record that the trial court acted upon either motion.

On June 16, 2017, the Defender's Association of Philadelphia filed a PCRA[1] petition on Sanchez's behalf, alleging their own ineffectiveness for failing to file a timely notice of appeal as requested by Sanchez. The PCRA court appointed counsel, and Sanchez's direct appeal rights were reinstated *nunc pro tunc* on September 11, 2017. PCRA counsel failed to file a notice of appeal on Sanchez's behalf within thirty days. Instead, the appeal was not filed until six months later on March 12, 2018. By order entered June 1, 2018, this Court quashed Sanchez's appeal as untimely.

On September 13, 2018, Sanchez filed a second PCRA, in which he sought new counsel and reinstatement of his appellate rights. The PCRA court appointed new counsel, and, on January 17, 2019, Sanchez's appellate rights were reinstated for a second time. However, his counsel again did not file a timely notice of appeal on his behalf. By order entered April 11, 2019, the PCRA court removed that counsel and appointed current counsel ("appellate counsel"). Appellate counsel entered his appearance on April 18, 2019, and, thereafter, filed a notice of appeal on Sanchez's behalf.[2] Both Sanchez and

_____

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] The certified record for each trial court docket contains a notice of appeal listing both docket numbers. Although Sanchez included both trial court docket numbers on his separate appeals, this fact no longer requires quashal. **See Commonwealth v. Johnson**, ____ A.3d ____, ____ (Pa. Super. 2020) (*en banc*), Slip Opinion at 12 (partially overruling **Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019), to the extent that **Creese** interpreted **Walker** as requiring Superior Court to quash appeals when appellant filed multiple notices of appeal and each notice lists all of the appealed from docket

the trial court have complied with Pa.R.A.P. 1925. In this Court, current counsel filed a motion to withdraw as counsel and an **Anders** brief. Sanchez did not file a response to the motion or the **Anders** brief.

In the **Anders** Brief, appellate counsel asserts that there are no "non-frivolous issues that support an appeal in this case" because Sanchez would be unable to establish that the trial court abused its discretion in sentencing him to six to twelve years in prison following his latest probation revocations. **See Anders** Brief at 7-9.

"When presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." **Commonwealth v. Garang**, 9 A.3d 237, 240 (Pa. Super. 2010) (citation omitted). Pursuant to **Anders**, when counsel believes an appeal is frivolous and wishes to withdraw from representation, he/she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel

---

numbers). **See also Commonwealth v. Larkin**, ___ A.3d ___, ___ (Pa. Super. 2020), Slip Opinion at 3 (accord).

In addition, although when appointing current counsel, the trial court did not expressly reinstate Sanchez's right to appeal *nunc pro tunc*, the trial court addressed Sanchez's claim. Given this circumstance, and the failure of prior attorneys to litigate Sanchez's appeal, we will treat as done "that which ought to have been done," in the interests of judicial economy, and we will therefore address the merits of Sanchez's claim. **McCormick v. Northeastern Bank of Pennsylvania**, 561 A.2d 328, 330 n.1 (Pa. 1989); *see also Commonwealth v. Carter*, 122 A.3d 388, 391-92 (Pa. Super. 2015).

has determined the appeal would be frivolous; (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and (3) furnish a copy of the brief to the defendant and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of this Court's attention.

*Commonwealth v. Edwards*, 906 A.2d 1225, 1227 (Pa. Super. 2006) (citation omitted). In *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of *Anders*, *i.e.*, the contents of an *Anders* brief, and required that the brief

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Once counsel has satisfied the *Anders* requirements, it is then this Court's responsibility "to conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018).

Here, appellate counsel has complied with each of the requirements of *Anders*. He indicated that he conscientiously examined the record and

determined that an appeal would be frivolous. Further, appellate counsel's *Anders* brief comports with the requirements set forth by the Supreme Court of Pennsylvania in *Santiago*. Finally, the record includes a copy of the letter that appellate counsel sent to Sanchez advising him of his right to proceed *pro se* or retain alternate counsel and file additional claims, and stating his intention to seek permission to withdraw. Accordingly, appellate counsel has complied with the procedural requirements for withdrawing from representation, and we will conduct an independent review to determine whether Sanchez's appeal is wholly frivolous.

The issue Sanchez wished to raise on appeal involved a challenge to the discretionary aspects of his sentence. This Court has explained that, to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Colon*, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013)).

Here, although appellate counsel filed a notice of appeal and a post-sentence motion previously was filed on Sanchez's behalf, the *Anders* Brief

does not include a Pa.R.A.P. 2119(f) statement. However, we have previously held that "[w]here counsel files an *Anders* brief, this Court has reviewed the matter even absent a separate Pa.R.A.P. 2119(f) statement." *Commonwealth v. Zeigler*, 112 A.3d 656, 661 (Pa. Super. 2015) (citations omitted). Thus, we will address the merits of Sanchez's sentencing claim.

Our standard of review when deciding a sentencing claim is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shull*, 148 A.3d 820, 831 (Pa. Super. 2016) (citation omitted).

Here, at the time of sentencing, the trial court provided the following reasons for its sentencing choice:

> THE COURT: That's right.
>
> I have been around and around and around with [Sanchez]. I have outlined all the times I tried to help him since 2005. It's now 2017. [Sanchez] decides to go out and burglarize someone's home in Luzerne County. And there's another direct violation. And, you know, he has to understand that this kind of life that he's leading [has] to stop.
>
> ***
>
> THE COURT: So the record is absolutely clear, in addition to this being a direct violation, [Sanchez's]

sentence is absolutely necessary to vindicate the authority of the [c]ourt. [Sanchez] has been thumbing his nose at this [c]ourt since 2005. Every time I gave him a sentence he always absconded. He always did things the way he wanted to do it. And he's never complied with any of the terms and conditions of my sentence.

He absconded from two or three different drug treatment programs . . . He's never complied with this [c]ourt's sentence in all of the years he served under this [c]ourt's sentence. He has never done anything he was supposed to do. He never completed not one drug program. He never paid any of his fines and costs. He never did anything that he was supposed to do. So that's also the reason for my sentence.

So it's no surprise to me that [Sanchez] moved to Luzerne County because he had absconded every single time he ever got out of jail before that anyway.

N.T., 5/9/17, at 16-18.

The trial court found that Sanchez's challenge to the discretionary aspects of his sentence did not entitle him to relief. Amplifying its statements at sentencing, in its Rule 1925(a) opinion the court first explained that its aggregate sentence of 6 to 12 years of state incarceration "was well within the statutory limits and as a reasonable exercise of this [c]ourt's discretion in light of [Sanchez's] direct violation, absconding from supervision, continued drug use, and failure to comply with any of the terms and conditions of his sentence". Trial Court Opinion, 9/13/19, at 6. The trial court then recounted the prior sentences it imposed on Sanchez and how, once released from custody, Sanchez committed new crimes. *See id.* at 6-7. Finally, the trial court explained that it fashioned an individualized sentence for Sanchez considering the sentencing factors regarding the protection of the public, the

gravity of the offense in relation to the impact on the community, and his

rehabilitative needs. *Id.* at 7.

The trial court then summarized its reasons for sentencing Sanchez to

an aggregate term of six to twelve years of incarceration:

> Since his guilty plea in 2005, the [c]ourt had given [Sanchez] numerous chances to rehabilitate himself through the County IP program, inpatient drug treatment, State IP program, county incarceration and state incarceration. Unfortunately, [Sanchez] failed to take his sentence seriously and his conduct while on probation indicated that he was not making meaningful progress towards rehabilitation as he absconded from supervision, completely ignored the terms and conditions of his sentence, and committed new crimes. Revocation and a state sentence was an appropriate sentence under the circumstances in order to not only vindicate the authority of the court, but also to aid in [Sanchez's] rehabilitation and protect the public from his criminal activities. In order to make this determination, this [c]ourt considered [Sanchez's] history since his original negotiated guilty plea in 2005, reviewed the probation officer's summary report and recommendation, heard argument from defense counsel and the Commonwealth, and listened to [Sanchez's] allocution. After taking all of this into consideration, this [c]ourt found it appropriate to impose a 3 to 6 year state sentence on each case to run consecutively to one another, for an aggregate term of 6 to 12 years [of] state incarceration. As stated above, there is no requirement that this [c]ourt impose the "minimum possible sentence." Rather, based upon [Sanchez's] direct violations and ongoing failure to take the necessary steps to comply with any of the terms and conditions of his sentence, this [c]ourt found it appropriate to sentence [Sanchez] to a term of state incarceration.

Trial Court Opinion, 9/13/19, at 7-8.

Our review of the record supports the trial court's conclusions. The court's thorough review of Appellant's prior crimes may be read as evincing the court's concern that past attempts at rehabilitating Appellant not only failed, but led to a continuation of criminal behavior once released from incarceration. As the court noted, a long sentence of state incarceration would aid Sanchez in rehabilitation where other attempts failed to do so.

Appellate counsel notes that Sanchez claimed his sentence was excessive largely because the individual terms of incarceration on each charge at these dockets were imposed consecutively, as well as consecutive to his Luzerne County sentence. As noted by the trial court, this claim is without merit because "[i]t is well-settled law in Pennsylvania that a sentencing court has discretion 'to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.'" Trial Court Opinion, 9/13/19, at 8 (quoting **Commonwealth v. Johnson-Daniels**, 167 A.3d 17, 28 (Pa. Super. 2017) (citations omitted). This is especially true where, as in the present case, there are separate crimes with multiple victims. **See Commonwealth v. Hoag**, 665 A.2d 1212, 1214 (Pa. Super. 1995) (explaining that there is no reason an appellant should be afforded a "volume discount" for his crimes by having all of the sentences run concurrently). Thus, Sanchez's discretionary challenge to his sentence is wholly frivolous.

Finally, as required by **Anders**, we have independently reviewed the record in order to determine whether there are any non-frivolous issues

- 11 -

present in this case. Our independent review of the record discloses no other non-frivolous issues that Sanchez could have raised and that appellate counsel overlooked. ***See Dempster***, ***supra***. Having concluded that there are no meritorious issues, we grant appellate counsel's petition to withdraw and affirm Sanchez's judgment of sentence.

Judgment of sentence affirmed.

Judge Bowe's joins the memorandum.

Judge Strassburger files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/17/2020